Good morning, Your Honors. May it please the Court, my name is Gloria Lopez and I represent the respondent, Jorge Mayta. The issues in this case are three. Number one, the BIA committed error in concurring with the immigration judge. The petitioner asylum application was barred by the one-year bar rule. Number two, did the BIA commit error in agreeing with the court that he was not eligible for asylum and withholding a removal in Torture Convention Protection. And number three, did the BIA commit error in agreeing with the judge that the petitioner was barred under Section 241b-3, which is known as the persecutor bar. So regarding the first issue, the respondent the petitioner, I'm sorry, the petitioner um. Kagan. Jurisdiction over the first issue? I'm sorry? Do we have jurisdiction over the first issue? I was under the impression that there was. The timeliness and where essentially it's a factual question as to why he was not timely. Why he was, whether he had extraordinary circumstances. Yes. He basically was late in filing. I understand that. I want to know whether we have jurisdiction over the question. I believe we do, Your Honor, unless I'm wrong. Why? I thought there was a barrier to jurisdiction under the statute and that we have an exception for legal and constitutional questions, but this is neither. Okay. Then I'm confused. So I'll go ahead with the second issue. Wasn't that the government's position in its brief? Yes. And then have you responded to it after you didn't file a reply brief, right? No, we didn't reply to that issue. And now you're arguing it again, even though you have no answer to the fact that we have no jurisdiction. I apologize, Your Honor. I'll move on to the second issue. So the second issue is whether he — whether the Respondent established withholding or removal and torture convention protection. Isn't that the same question as the — as the persecutor-terrorist question, because that's why he was denied? Well, he's not two questions. There's one question. He was denied because of the bar, but assuming that we were to overcome the bar, there's still the issue whether — there's no other issue. Well, then regarding the bar, basically — regarding the bar, basically, the Respondent — the Petitioner, I'm sorry. The Petitioner never participated personally in any form of persecution. He participated in nonviolent activity. Well, that's what he testified to, but it was found not credible as to that, because he also said at other times that he carried guns and had gun battles and stood watch while people were being eliminated. But he explained that that was a mistake in his declaration. Well, he explained it, but it wasn't believed. So unless you deal with the — with the — with that, then you're nowhere. That's where he stands, Your Honor. He stands by his testimony that he was misunderstood and that he could — he never persecuted anyone. I understand what he said, but the question is if the IJA and the BIA found otherwise, what do we do with that? We're going to believe your person even though they didn't? Well, that's — that's where he stands. That's — that's all I have. I'm coming close to telling you to sit down, because you have no preparation for anything that has to do with this case. Well, I disagree, Your Honor, respectfully. He — basically, the entire issue of the persecutor bar is whether he participated in violent activities and whether the group was a terrorist group. Okay. Sure. Thank you. I didn't tell you to sit down. I said I was coming close to telling you to sit down. You can continue if you want to, but you really have to be on point and argue the issues in the case and not just tell me what your client said in testimony. Yes, Your Honor. That's — that's all we have. You also said in your brief, mystifyingly, that the Shining Path was not on the terrorist list, but it is. Is that right? Recently, it has been put on the — on the list. Recently, since — since the — since this case? Yes, Your Honor. I believe the government submitted — the government recently submitted some additional materials that show that the group is on the list now. Hasn't the Shining Path been known as a terrorist organization since back in the 1980s? I guess it was officially submitted as a group. Maybe earlier. Thank you. Thank you.  Okay. That's all. Thank you. May it please the Court. I'm Mark Walters, representing the Attorney General of the United States. I will go right to the second issue unless the Court has questions on jurisdiction over the asylum claim. In this case, and in any case involving a persecutor barred to asylum, withholding, and cat withholding, if the evidence indicates that one of the bars, including here the terrorist bar and the persecutor bar, may apply, then included in the alien's burden to show eligibility for relief is an obligation to show that those bars don't apply. Counsel, why are you arguing this point? Well, I think the whole case, I think this is what the case turns on, but if the Court doesn't have questions about this issue, I'm happy to rest on the briefs. Well, but the only thing, just to get the lay of the land, the — if one took what he testified to, the persecutor bar wouldn't apply. It's what he testified to. Is that right? If he said that I was a lookout while we looted Coca-Cola trucks, the persecutor bar would not apply. All right. Would the terrorist bar apply? The terrorist bar would probably apply because the Shining Path is and was then a Tier III terrorist organization, and he provided material support. Tier III, meaning it was listed at that time. It was not. It was not listed. In 1997, it became listed. So what do you mean by a Tier III, then? Yes. And — So what — so explain to me, if it was not listed at the time, then why would he be — the terrorist bar apply to him? Well, the third tier doesn't require listing. And the third tier is retroactive. And this Court's decision in the Bojnordi case, that's B-O-J-N-O-O-R-D-I, this past summer establishes that. So we sent that in a 28-J letter. I think it was established before that, but certainly in this circuit it's clear now as of this summer. So the terrorist bar really — there are a lot of things that are retroactive and some that aren't. But the objective is to keep people who are engaged in those activities out. And when the law was enacted, it wasn't meant just to apply from this day forward. A lot of things went on around the world that made people very unattractive immigrants because of those activities. And so when Congress decided to set up a defense, in this case against eligibility for relief from removal, it wasn't just acting from that day forward. It was trying to take in actors and activities that occurred before the enactment. So how far back are you saying it goes? It's retroactive to when? Well, indefinitely for Tier 3. Okay. So if you were involved — two or more persons involved in terrorist activity at any time, you would meet the Tier 3 definition, that group. In this case, Shining Path was notorious long before it was listed. As you mentioned, from the 80s. It was founded in 1969. I'm not sure whether it was violent immediately, but it became violent fairly quickly. And it terrorized the Peruvian government, the officials, union leaders, others that they deemed their enemies for the better part of the 80s and the 90s. And it's not a group — if I could jump ahead to make a point on the CAT claim for CAT deferral — it's not a group the Peruvian government turns a blind eye to or ignores. One — several of its leaders have been convicted and imprisoned for the activities of that group. So the argument that there might be a problem under the Convention Against Torture if Mr. Meda were to go back really doesn't fly, because the torture has to be by the Peruvian government — and he never said he feared them in terms of torture — or by — with the acquiescence of. And nothing in the record suggests that the Peruvian government acquiesces in Shining Path torture. So the CAT claim, which is not barred, the CAT deferral claim, is simply not valid on the merits. Can we go back to the terrorism issue for a while? I need some help in walking through that. When you say it's retroactive, it still has to have had the characteristics of a terrorist group at the time that he was working with it, right? Yes. Yes. If he had — What's retroactive? Well, the bar to relief. In other words, if you come here in 2014 and file an application for asylum, and you were a Nazi during World War II, and I know we're getting — And the Nazis weren't on any list, because there was no list. Right. There was no list. But if you now — if there's now a list — I mean, for example, if Shining Path is on a list now, is it on a list saying that it's been a terrorist group since 1980? Is that what the list says? Does the list say when Shining Path — I don't believe it does, Your Honor. So it can be — I'm not absolutely certain, but I don't remember seeing, you know, an effort to — So I don't understand what — is there anything different? Does the fact that Shining Path is now on a list end up treating it — It makes no difference in this case. It makes no difference. So the Court does not need to — Because it's simply whether it was a terrorist group, objectively speaking, by characteristics that even if not listed at the time. Right. In this case, it makes absolutely no difference. The Court does not need to delve into that. We simply said in our brief when the Petitioner mentioned that it wasn't listed, which, incidentally, is the sole argument they have challenging the terrorist bar, that, A, it's wrong, it was listed, and, B, it doesn't — But it wasn't listed at the time. It's not relevant. But it wasn't really wrong. It wasn't listed at the relevant time. No. But, I mean, it would — no. But it didn't have to be. It didn't have to be. No. But then in terms of reviewability, if it's not listed, do we have — can we at least review it? I mean, we have to be able to review it, then, as to whether it had the characteristics of a terrorist group at the time, if nobody else is designated as a terrorist group. Yes. I mean, you will be able to look in the record and find materials from the State Department and others on the activities of the Shining Path. So you don't have a jurisdictional argument with regard to the terrorist group issue? Well, I do in this sense, Your Honor, that the terrorist bar to asylum, there's a — no judicial review of that with the, again, exception that you've recognized for legal and constitutional questions. We submit — But you mean to say that the BIA, if the government has not itself designated  So it's — I mean, that the BIA gets to decide that some group is a terrorist group just because and doesn't — and it's not reviewable? No. I'm not saying it's not reviewable. You just said it's not reviewable. I didn't mean to say that, Your Honor. I meant to say you'll be able to look in this record and find information. But you said that there's a barrier with regard to asylum to reviewing whether it's a terrorist group, except for legal and constitutional questions. Well, you can look at it. But they're also not legal and constitutional questions. Okay. So it may be a factual question. Let me be clear. It is not a bar to your — you will be able to look at it in connection with the withholding claims. Right. And it doesn't matter about asylum because we're not getting to the asylum anyway. If you don't look at the asylum, it doesn't matter. The point I was trying to make, because you said, no, it doesn't affect your jurisdiction at all, or you don't — you know, there's no jurisdictional issue about that. There is on the very narrow question of whether the asylum application is barred for the second reason of the statute says if there's a terrorist bar, there's no jurisdiction to review it. I see. We submitted in our brief that they haven't made a colorable legal or constitutional challenge to the terrorist bar by simply saying it wasn't listed because it's irrelevant. Tier 3 makes it irrelevant. I see. So that's not a colorable argument, is our view. But, yes, as a general matter, for purposes of what the Court now appears to be interested in, which is the second and third points, you will be able to review that. And I should point out that in the opinion that you wrote, Judge Berzon, in Miranda Alvarado, it talks about Shining Path and that the evidence clearly indicated in that case that it was a terrorist organization. So this is not a new inquiry. Well, the barrier — we didn't rest on that, as I recall. We still required some showing of persecutor status. Yeah. Yes. I'm not sure. I don't remember the argument. Forgive me, but I'm not sure the terrorist bar was an issue in that case. I don't think it was. But you had a passing reference to the Shining Path being a well-known terrorist organization. But I don't think that was the basis for —  It was purely a persecutor bar case, if I remember correctly. And so they had to — you had to determine whether or not translating during a torture session was participating in persecution. So then as to the first issue, my — which I said there wasn't an incident that the Petitioner never made an argument about, but my understanding is that under, say, Ramadan and so on, we still — the ninth circumstance of historical law is still that we don't have jurisdiction over a factual question. Right. With regard to the extraordinary circumstance. Unless it's mixed fact and law, and we take the position that this is not. It's just, was his mental state such that he couldn't abide by the time limitation for filing the asylum application, or a pure question of law? It's a pretty fuzzy line, i.e. It usually is. It's one — Because, I mean, the ALJ said, essentially, I'm not going — I mean, she didn't say, I don't believe that he was feeling this way. She said, I don't — essentially said, I don't think that's an extraordinary circumstance. I guess we could review that. Well, if there was a legal or constitutional question about it. The legal question is the fact that he was very upset about what happened in Peru and couldn't — and felt mentally that he couldn't talk about it. Is that an extraordinary circumstance? That's the legal question. Your Honor, I would respectfully disagree, because in this case, what the IJ did was say there was discussion about him possibly having the PTSD. Right. And she said — I understand she said there wasn't any reason for that. She said, I'm not qualified to diagnose. You should bring in expert evidence on that. And the attorney said, we will look into it, the next hearing or the one after that. Petitioner's attorney came back and said, we had him evaluated. He doesn't have PTSD, and we think he'll be able to testify. So to the extent the mental state for filing an application for asylum on time was relevant here, we don't have any evidence. The factual question is he says, I was too distracted and distressed and tired to focus and to — and I was afraid. I was afraid. My understanding is the IJ didn't say, I don't believe that. Right. She said, that's not an extraordinary circumstance. Yes. She said it's not an extraordinary circumstance, but partly because she thought that he was capable of, just as he did at the hearing, he had a little difficulty with the interpretation throughout the hearing, but she said he got his points across, and she saw no reason why he couldn't have done the same and filed a timely asylum application. She also pointed out that if he was afraid that people would find out about it, he could have availed himself of legal advice and learned about the confidentiality provisions. We think those are purely factual questions. And if they aren't, there's going to be almost nothing that is. But we appreciate the fact that sometimes it's hard to draw the line. Your Honor, unless the Court has questions, I have nothing further. Thank you. Thank you.  A couple of points, Your Honor. I do agree with the one-year bar. I do agree with that the judge did say that it was not an extraordinary circumstance, meaning that even if he had had PTSD, he would not be considered legally an extraordinary circumstance. And in regards to the torture convention, since the court, the judge recognized in her opinion that it is possible that the Petitioner may be arrested by the authorities for his participation in the Shining Path, and that he will be tortured. So the judge did recognize that that's a possibility. And since that is not barred, he should have been approved for cap protection. What about the acquiescence issue? The acquiescence. He has to prove that he was being tortured with the acquiescence of the Peruvian government. Well, it would be the torture would be by the government. According to the country reports, it was marked. I don't have the – it was marked as Exhibit 8 at the hearing. And I'm looking at the page 25 of the order, if that helps. And so the torture would be by the government, by the authorities. And the IJ said that she believed that? Yes, it's on page 25. And she said she believed that that was more likely than not? No, she said that it was a possibility. Right. And that's not good enough, is it? Not for her. Well, that's not standard, is it? Well, the Petitioner argues that the – You have to demonstrate that she was wrong, that it was more likely than not, it wasn't just a possibility. The Petitioner's brief – the Petitioner's argument is that it is more likely than not. Right. Anything else? Given the country reports. Nothing else. Thank you. Thank you. The case of Nader v. Holder is submitted, and we will take a short break. Thank you.
judges: Bucklo, Berzon, Rawlinson